

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00364-CV

## IN THE MATTER OF A.C., A JUVENILE

**From the 40th District Court
Ellis County, Texas
Trial Court No. 39503CR**

## MEMORANDUM OPINION

In December of 2011, A.C. was adjudicated delinquent on a charge of aggravated sexual assault of a child and given a determinate sentence of seven years in the Texas Juvenile Justice Department with a possible transfer to the Institutional Division of the Texas Department of Criminal Justice. In October of 2014, A.C. appeared for a release/transfer hearing pursuant to section 54.11 of the Texas Family Code to determine the appropriateness and necessity of transferring him to TDCJ for the remainder of his seven year sentence. After the hearing, the trial court found it was in the best interest of A.C., and of society, that A.C. be placed in the custody of the TDCJ for the remainder of his seven year sentence and ordered A.C. to be immediately

transferred to TDCJ. Because the trial court did not abuse its discretion in transferring A.C. to TDCJ, the trial court's judgment is affirmed.

In his sole issue on appeal, A.C. contends the trial court abused its discretion when it ordered A.C. transferred to TDCJ. When a juvenile is given a determinate sentence, upon TJJD's request to transfer the juvenile to TDCJ, the trial court is required to hold a hearing. *See* TEX. FAM. CODE ANN. § 54.11 (West 2014). *See also* TEX. HUM. RES. CODE ANN. § 244.014 (West 2013). Following the hearing, the trial court may either (1) order the return of the juvenile to TJJD or (2) order the transfer of the juvenile to the custody of TDCJ for the completion of his sentence. *See* Acts 1995, 74th Leg., ch. 262 (H.B. 327), § 46, effective January 1, 1996 (current version at TEX. FAM. CODE ANN. § 54.11(i) (West 2014)).[1]

A trial court's decision to transfer a juvenile from TJJD to TDCJ is reviewed for an abuse of discretion. *In re F.D.*, 245 S.W.3d 110, 113 (Tex. App.—Dallas 2008, no pet.); *In re J.L.C.*, 160 S.W.3d 312, 313 (Tex. App.—Dallas 2005, no pet.)). In determining whether the trial court abused its discretion, we review the entire record to determine if the trial court acted arbitrarily, unreasonably, or without reference to any guiding principles or

---

[1] This portion of the statute was amended in 2013 to include the possibility of returning a juvenile to a "post-adjudication secure correctional facility" in addition to the TJJD. However, this amendment is not applicable to A.C. because his conduct occurred before the effective date of the amendment. *See* Acts 2013, 83rd Leg., ch. 1323 (S.B. 511), § 12 ("The changes in law made by this Act apply only to conduct that occurs on or after the effective date of this Act [December 1, 2013]. Conduct that occurs before the effective date of this Act is covered by the law in effect at the time the conduct occurred, and the former law is continued in effect for that purpose. For the purposes of this section, conduct occurs before the effective date of this Act if any element of the conduct occurred before that date.").

rules. *In re D.L.*, 198 S.W.3d 228, 229 (Tex. App.—Dallas 2006, pet. denied). "The trial court's decision will be upheld if the record contains some evidence to support it." *In re N.K.M.*, 387 S.W.3d 859, 864 (Tex. App.—San Antonio 2012, no pet.).

When conducting a transfer or release hearing, the trial court may consider written reports provided by probation officers, professional court employees, professional consultants, or employees of TJJD, in addition to the testimony of witnesses. *See* TEX. FAM. CODE ANN. § 54.11(d) (West 2014). Additionally, when making a decision whether to release or transfer a juvenile, the trial court may take into account:

> the experiences and character of the person before and after commitment to [TJJD], the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of [TJJD] and prosecuting attorney, the best interests of the person, and any other factor relevant to the issue to be decided.

*See* Acts 1995, 74th Leg., ch. 262 (H.B. 327), § 46, effective January 1, 1996 (current version at TEX. FAM. CODE ANN. § 54.11(k) (West 2014)). The trial court is not obliged to consider all of the factors listed, and it may consider relevant factors not listed. *In re N.K.M.*, 387 S.W.3d at 864; *see In re J.J.*, 276 S.W.3d 171, 178 (Tex. App.—Austin 2008, pet. denied). Moreover, the trial court can assign different weights to the factors considered. *In re N.K.M.*, 387 S.W.3d at 864.

A.C's initial determinant sentence was suspended. He was placed on probation for 10 years and committed to the Grayson County Juvenile Detention Center Boot

Camp Program for successful completion of its program. In April of 2012, A.C. was unsuccessfully discharged from the boot camp, his probation was revoked, and in August of that year, he was committed to the TJJD for the remainder of his seven year sentence.

During the next 25 months in TJJD's custody, A.C. accumulated over 300 incidents of misconduct, was placed in the security unit or confined in the security unit for a period of time on 95 occasions, and committed 34 major rule violations. Part of that time, A.C. resided in a facility in Mart where he had 152 security referrals and 197 behavioral incidents, which included incidents of inappropriate sexual behavior. A.C. was transferred to a facility in Gainesville where he remained until a preliminary hearing prior to the actual release/transfer hearing. There, A.C. had 36 incident reports resulting in 24 security referrals, 6 security admissions, and one major rule violation which involved inappropriate sexual behavior. The supervisor of the specialized treatment programs in Gainesville was most concerned that A.C. continued to sexually offend in secured custody. The superintendent at the Gainesville facility found A.C. to be impulsive, demanding, and resistant to authority.

However, there was also testimony that A.C.'s behavior had improved some while at the Gainesville Unit and that he had no incident reports in the two weeks at the Hunt County Detention Center while awaiting the transfer/release hearing. An employee in the sex offender treatment program at Gainesville stated that A.C. "tried

hard" to improve and believed it was not in A.C.'s best interest to be transferred to TDCJ before reaching his goals. Further, A.C. told the court that he had now taken responsibility for his actions, was willing to accept sex offender treatment, and was committed to working the program and setting goals in order to be eligible for release.

A.C.'s decision to finally participate in the programs offered to him came too late. After reviewing the entire record, we find there is some evidence to support the trial court's decision to transfer A.C. to TDCJ; and thus, the trial court did not abuse its discretion in making that decision.

A.C.'s sole issue is overruled, and the trial court's judgment is affirmed.


                                        TOM GRAY
                                        Chief Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed October 22, 2015
[CV06]

